UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:24-cr-179-WWB-LLL
 18 U.S.C. § 1349
CRYSTAL DENEAN HARVELL 18 U.S.C. § 1343

# INFORMATION

The U.S. Attorney charges:

## COUNT ONE
(Conspiracy to Commit Wire Fraud)

### A. Introduction

1. At all times material to this Information, various business operated in the Middle District of Florida, and elsewhere.

2. Among other services offered by the businesses to customers was the ability to apply for a line of credit to purchase merchandise, services and pay for healthcare related costs. When applying for a credit account, applicants provided their personal identification information to include their Social Security number.

### B. The Conspiracy

3. Beginning on an unknown date, but not later than in or about February 2016, and continuing through and including in or about September 2019, in the Middle District of Florida, and elsewhere, the defendant,

CRYSTAL DENEAN HARVELL,

did knowingly and willfully combine, conspire, confederate, and agree with others, both known and unknown, to devise and attempt to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. § 1343.

### C. Manner and Means of the Conspiracy

4. The manner and means by which the conspirators carried out the conspiracy and scheme and artifice to defraud included, but were not limited to the following:

   a. It was part of the conspiracy in the Middle District of Florida, and elsewhere, that the defendant and her conspirators fraudulently obtained the means of identification of other individuals, that is, the Social Security number of genuine individuals;

   b. It was further part of the conspiracy that the defendant and other conspirators would recruit individuals to obtain lines of credit at various businesses, using the Social Security numbers;

   c. It was further part of the conspiracy that the defendant and her conspirators would provide the Social Security numbers to the individuals recruited;

   d. It was further part of the conspiracy that the defendant and her conspirators would tell individuals recruited in furtherance of the conspiracy what businesses to contact in order to apply for a line of credit, using the Social Security numbers;

e. It was further part of the conspiracy that the defendant and her conspirators would have the individuals recruited in furtherance of the conspiracy contact businesses online and/or over the phone and apply for a line of credit, using the Social Security number of a genuine individual;

f. It was further part of the conspiracy that the defendant and her conspirators would sometimes contact certain businesses using both the personal identification information of the individuals recruited in furtherance of the conspiracy and the fraudulently obtained Social Security number in order to apply for a line of credit;

g. It was further part of the conspiracy that the defendant and her conspirators would after fraudulently obtaining a line of credit at a business sometimes have the individuals recruited in furtherance of the conspiracy call the business and among other things, increase the line of credit, change the address associated with the account, and add other authorized users;

h. It was further part of the conspiracy that the defendant and her conspirators would have the individuals recruited in furtherance of the conspiracy go to the business wherein the individuals successfully obtained a line of credit;

i. It was further part of the conspiracy that the defendant and her conspirators would sometimes accompany the individuals recruited in furtherance of the conspiracy to the business wherein the individuals successfully obtained a line of credit;

j. It was further part of the conspiracy that the defendant and her conspirators would direct the individuals recruited in furtherance of the conspiracy to purchase merchandise at the business where the recruited individuals successfully obtained a line of credit;

k. It was further part of the conspiracy that the defendant and her conspirators would sometimes purchase merchandise from businesses, using the line of credit fraudulently opened by the individuals recruited in furtherance of the conspiracy;

l. It was further part of the conspiracy that the defendant and her conspirators would sometimes communicate on-line in order to resell on Facebook the merchandise fraudulently purchased from businesses, using the line of credit opened by the individuals recruited in furtherance of the conspiracy;

m. It was further part of the conspiracy that the defendant compensated individuals for participating in the conspiracy;

n. It was further part of the conspiracy that the conspirators would, and did, share in the proceeds of the conspiracy; and

o. It was further a part of the conspiracy that the conspirators would and did perform acts and make statements to hide and conceal and cause to be hidden and concealed the purpose of the conspiracy and the acts committed in furtherance thereof.

In violation of 18 U.S.C. § 1349.

## COUNT TWO
### (Wire Fraud)

**A.     Introduction**

At all times relevant to this Information:

1. Navy Federal Credit Union was a financial institution doing business in the Middle District of Florida, and elsewhere, and its accounts were federally insured by the National Credit Union Administration.

2. Prestamos Community Development Financial Institution ("Prestamos") was a lending service that among other services assisted businesses in accessing the Small Business Administration Paycheck Protection Program. Prestamos worked with Blue Acorn to access the Small Business Administration Paycheck Protection Program.

3. Blue Acorn was a financial services company that among other services worked with companies to include Prestamos to assist businesses in accessing the Small Business Administration Paycheck Protection Program.

4. Blue Acorn utilized computer servers / data centers outside of the state of Florida, as part of conducting nationwide business operations.

**The Small Business Administration**

5. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses.

6. The SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees. In addition to traditional SBA funding programs, The CARES Act established several new temporary programs and provided for the expansion of others to address the COVID-19 outbreak.

### The Paycheck Protection Program

7. One of the new programs was the SBA Paycheck Protection Program ("PPP"), which was a loan designed to provide a direct incentive for small businesses to keep their workers on the payroll. Under this program, the SBA could forgive all or part of loans, if employees were kept on the payroll for eight weeks and borrowers submitted documentation confirming that the loan proceeds were used for certain qualifying business expenses (i.e., payroll, rent, mortgage interest, or utilities). The PPP forgiveness process required the applicant to electronically submit a PPP Loan Forgiveness Application Form, a SBA Form 3508S.

8. The PPP application process required interested applicants to electronically submit a Borrower Application Form, a SBA Form 2483. The application contained information as to the purpose of the loan, average monthly payroll, number of employees, and background of the business and its owner. Applicants were also required to make certain good faith certifications, including that economic uncertainties had necessitated their loan requests for continued business operations, and that they intended to use loan proceeds only for the authorized purposes.

9. Further, when submitting the SBA Form 2483, the authorized representative certified his understanding that, should the PPP funds be knowingly used for unauthorized purposes, the United States could hold him legally liable, including for charges of fraud. The applicant was also required to certify the truth and accuracy of any information provided on the SBA Form 2483 and in all supporting documents, to include any documents intended to verify the applicant's payroll expenses. The applicant was required to certify an understanding that knowingly making a false statement to obtain a guaranteed loan from the SBA is punishable under the law and subject to criminal penalties.

### B. The Scheme and Artifice

10. Beginning on an unknown date, but no later than in or around April 2021, and continuing through at least in or around November 2021, in the Middle District of Florida and elsewhere, the defendant,

CRYSTAL DENEAN HARVELL,

knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### C. <u>Manner and Means of the Scheme and Artifice</u>

11. The manner and means by which the defendant sought to accomplish the scheme to defraud included, among others, the following:

  a. It was part of the scheme and artifice that the defendant would and did fraudulently complete an IRS Form 1040, Schedule C, "Profit or Loss From Business" for purposes of applying for a PPP loan to which she was not entitled;

  b. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed the principal business or profession as beautician services;

  c. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed under "Part I Income" gross receipts or sales for her business as $98,000;

  d. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed for her business $10,000 in supply expenses;

  e. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed for her business $7000 in advertising expenses;

  f. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed for her business $11,000 in car and truck expenses;

  g. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed for her business $1,000 in office expenses;

  h. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed for her business $2,000 in repairs and maintenance;

  i. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed for her business $5,000 in commissions and fees;

  j. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed for her business a net profit of $57,500;

  k. It was further a part of the scheme and artifice that, in order to induce the SBA and a SBA Participating Lender to fund a PPP loan for her purported business, the defendant would and did submit, a false and fraudulent loan application that included multiple materially false and fraudulent representations and pretenses, such as:

        i.      stating a business gross income of $98,000 and that current economic uncertainty made the loan request necessary to support the ongoing operations of the defendant;

        ii.      certifying that the business was in operation on February 15, 2020;

        iii.      certifying that the funds would be used to maintain payroll;

        iv.      certifying the truth of the statements in the application; and

        v.      including fraudulent supporting documentation, that is, a fraudulently completed IRS Form 1040, Schedule C, "Profit or Loss From Business."

    l.    It was further a part of the scheme and artifice that the defendant would and did provide financial institution account information into which the fraudulently obtained PPP funds would be transferred via a ACH payment / wire transfer;

    m.    It was further a part of the scheme and artifice that the defendant would and did cause a SBA Participating Lender through its bank to send PPP loan proceeds via a ACH payment / wire transfer to the defendant's bank account at Navy Federal Credit Union;

n. It was further a part of the scheme and artifice that the defendant would and did retain fraud proceeds for the defendant's personal enrichment and entertainment;

o. It was further a part of the scheme and artifice that, in order to induce the SBA and a SBA Participating Lender to forgive the aforementioned PPP loan for her purported business, the defendant would and did submit, a false and fraudulent PPP Loan Forgiveness Application, a SBA Form 3508S that included multiple materially false and fraudulent representations and pretenses, such as:

   i. stating that the amount of the loan spent on payroll costs was $18,800;

   ii. certifying that she used the PPP loan proceeds for eligible uses; and

   iii. certifying the truth of the statements in the loan forgiveness application.

p. It was further a part of scheme and artifice that the defendant would and did perform acts, and make statements to promote and achieve the object of the scheme and artifice and to misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of the scheme and artifice and the acts committed in furtherance thereof.

## D. Execution of the Scheme and Artifice

12. On or about May 21, 2021, in the Middle District of Florida and elsewhere, the defendant,

CRYSTAL DENEAN HARVELL,

for the purpose of executing the scheme and artifice described above, transmitted and caused to be transmitted by means of wire, radio, or television communication in interstate and foreign commerce, certain writings, signals, signs, pictures, and sounds, that is, an Automated Clearing House / wire transfer of PPP loan proceeds in the amount of $20,415.00 from Prestamos to the Navy Federal Credit Union account of the defendant.

In violation of 18 U.S.C. § 1343.

## FORFEITURE

1. The allegations contained in Counts One and Two are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Upon conviction of a conspiracy of the violation of 18 U.S.C. § 1343, in violation of 18 U.S.C. § 1349, or upon the conviction of the violation of 18 U.S.C. § 1343, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3. The property to be forfeited includes, but is not limited to, an order of forfeiture for approximately $20,415, which represents the proceeds that the defendant personally obtained as a result of the violation in Count Two.

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

ROGER B. HANDBERG
United States Attorney

By: *[signature]*
KEVIN C. FREIN
Assistant United States Attorney

By: *[signature]*
MICHAEL J. COOLICAN
Assistant United States Attorney
Deputy Chief, Jacksonville Division